Ellis *vs.* Smith.

No. 36.—MAJOR ELLIS, tenant, &c. plaintiff in error, *vs.* DOE *ex dem.* JEREMIAH SMITH, defendant in error.

[1.] Upon a question of diligence, in the search for *written documents*, so as to entitle the party to introduce *secondary* evidence, he must show that he has, in good faith, exhausted all the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him.

[2.] The recitals in a deed of the *fi. fa.* and seizure and sale of the property under it, are *prima evidence* of the facts.

[3.] The depositions of a witness who was incompetent at the time he was sworn, on the ground of interest, cannot be purged by removing the disqualification on the trial.

[4.] The ancient, fixed and universal rule is, that the attesting witnesses to a deed, must be produced to prove any fact connected with the execution of the instrument, unless their absence is accounted for, and the fact that others may know more of the transaction, will not dispense with their testimony.

[5.] The acknowledgment by the party himself, that he executed the deed, or even his admission in answer to a bill filed for discovery, has been held not to dispense with the testimony of the subscribing witnesses.

[6.] And the rule is the same, whether the acknowledgment is offered in evidence against the party himself who made it or a third person.

[7.] The exceptions to the general rule requiring the production of the testimony of the attesting witnesses stated.

[8.] A judgment will not be reversed merely because a charge, legal in iself, may not be sufficiently full, or is calculated to mislead the Jury. In such case it is proper to ask an additional or explanatory charge.

[9.] The admission of illegal testimony is not sufficient to authorize a re-hearing, where the verdict could not have been affected by it.

[10.] A purchaser at Sheriff's sale, who has his deed first recorded, will gain the same preference over an unrecorded deed, as if he had bought directly from the debtor himself.

Ejectment, in Sumter Superior Court. Tried before Judge WARREN, May Term, 1851.

This was an action of ejectment, brought on the separate demises of John Cordery and Jeremiah Smith, against Major Ellis. The land was granted to John Cordery. Plaintiff claimed under a Sheriff's deed, reciting that the land was sold as the property

of John Cordery, in March, 1835. The defendant claimed under a deed from Cordery to Jonathan Lyon, dated 10th June, 1834.

When the Sheriff's deed was offered in evidence, it was proved by Eason Smith, that he had searched the Sheriff's and Clerk's offices for the *fi. fas.* under which the land was sold, and could not find them ; that Morgan, the Sheriff, who sold the land, was out of the State, and his successor was dead, and the *fi. fas.* could not be found among his papers. It was also proved by Willis A. Hawkins, that he had inquired of the presiding Justices of the Peace for the district in which the judgments were obtained. The docket could be found and the *fi. fas.* could not.

Counsel for defendant objected to the deed being read in evidence, on the grounds that there was no evidence of any judgment or execution authorizing a sale, or that they were ever levied by the proper officer, and further, that the evidence did not show sufficient diligence in searching for the *fi. fas.* The Court overruled the first two grounds, holding that the recitals in the deed were sufficient evidence of the facts, and overruled the third ground, holding the evidence of diligence sufficient. To these decisions defendant's counsel excepted.

Plaintiffs offered to read the depositions of John Cordery, the grantee, which were objected to by defendant's counsel, on the ground that he was interested, being lessor of the plaintiff and bound for costs. Plaintiff's counsel then struck out the count in the declaration on the demise of Cordery, and the Court admitted the evidence. To this decision defendant's counsel excepted.

Defendant also objected to this evidence being read, to prove that the deed from witness to Lyon was *ante dated*, on the ground that the subscribing witnesses to the deed would be the highest evidence. The Court overruled this objection, and defendant excepted.

The evidence in the cause need not be here repeated.

The Court charged the Jury, among other things, " That if the Sheriff's deed was duly recorded before defendant purchas-

Ellis *vs.* Smith.

ed, it was notice of any fraud or defect of the title which defendant was purchasing." To this charge defendant excepted.

The Court farther charged, " That if the Sheriff's sale was made before the deed from Cordery to Lyon was executed, the title under the Sheriff's sale was superior to the title of defendant, and the plaintiff should recover the premises in dispute, provided the *fi. fas.* under which the land was sold, were not paid off and satisfied before, or at the time that the sale was made." To this charge defendant excepted.

On these several exceptions error has been assigned.

E. R. Brown, for plaintiff in error.

1st. The Court erred in holding the recitals in the Sheriff's deed to be evidence of the existence of the *fi. fas.* and the levy of the same. *Hamet vs. Wyman*, 9 *Mass.* 138. *Barkley vs. Soreven*, 1 *N. & M.* 408. *Morreson vs. Dent*, 1 *Miss. R.* 246. 7 *Halst.* 182.

2d. Sufficient diligence had not been used to find or procure the *fi. fas.* under which the land was sold. *Vaughn vs. Biggers*, 6 *Ga. R.* 188.

3d. The Court erred in holding Cordery to be a competent witness to prove the deed made by him to Lyon, *ante dated*, without resorting to the subscribing witnesses to the deed. 1 *Ph. Ev.* 464. *Shaver vs. Ehli*, 16 *J. R.* 201. *Henry vs. Bishop*, 2 *Wend.* 576. *Roberts vs. Tennel*, 2 *Mon.* 247. *Zerby vs. Wilson*, 3 *Ham. R.* 42. *Townsend vs. Covington*, 3 *McCord*, 219. *Farnworth vs. Brigg*, 6 *N. Hamp. R.* 561. *January vs. Goodman*, 1 *Dall.* 208. *Pearl vs. Allen*, 1 *Tyl. R.* 4. *Bennett vs. Robinson*, 3 *Stew. & Por.* 227. *Whitmore vs. Brooks*, 1 *Greenl.* 57. 1 *N. C. L. Rep.* 93. 4 *M. & Selw.* 350.

4th. The Court erred in holding Cordery's depositions admissible, by reason of his name being stricken out as lessor *after* he had sworn. *Winn vs. Williams*, 1 *Minor*, 136. *Dolly vs. Wilson*, 14 *J. R.* 377. *Teneyck vs. Bill*, 5 *Wend.* 54. *Kyle vs. Bostick*, 10 *Ala.* 589.

5th. It was error in the charge to the Jury by the Court, in

assuming the existence of *fraud and defects* in the defendant's title, and charging them to find in plaintiff's favor on one contingency alone.   5 *Geo.* 441.

6th. It was also error in charging the *date* of the Sheriff's sale, and not the date of judgment, or its validity controlled the title. *Prince's D.* 426.   *Cobb's D.* 644, 5.

W. A. HAWKINS, for defendant, contended—

1. That the existence of the *fi. fa.* was established by Lyon's testimony, and if not, the recitals in the Sheriff's deed were evidence of the fact, and the regularity of the sale.   3 *Phil. Ev.* 1238.   2 *J. C.* 674.   15 *Mass.* 380.   8 *Wheat.* 326.   2 *Rand.* 87.   20 *John.* 168.   2 *Wend.* 369, '70, '75.   7 *Wend.* 160.   2 *Phil.* 10.   *Bar. & Cress.* 517.

2. The plaintiff below had used sufficient diligence to authorize the Court, in its discretion, to allow secondary evidence.   6 *Cobb*, 194, 198.

3. John Cordery was not competent to prove the date of the deed, and if not, the objection came too late.   3 *Phil. Ev.* 1453.   3 *Bing.* 192.   11 *Mass.* 319.   7 *Cobb*, 358.

4. Admitting Cordery's testimony to be incompetent, there was sufficient testimony to authorize the finding upon that point without it.

5. The Court administered the law properly in charging the Jury, that the recording of Sheriff's deed was notice of all defects in the title defendant was purchasing.   4 *Cow.* 599.   2 *Bing.* 502.   15 *Wend.* 588.

DUDLEY, represented by McCAY, for defendant, contended—

1. That if it were conceded that the Court below erred in admitting the evidence of Cordery, on the isolated ground of his being a party to the record, as there was abundant evidence besides that to warrant the finding, this Court will not order a new hearing.   1 *Kelly's Rep.* 580.

2. Slight evidence of the *existence* of the *fi. fas.* was sufficient,

and the questions of *loss and diligence* were for the Court. 6 *Cobb*, 194.

3. Having satisfied the Court below of the loss of the *fi. fas.* and of due diligence in searching for them, the Sheriff's deed carried with it legal presumptions that the Constable and himself had taken the requisite steps necessary to a legal sale of the land. 6 *Cobb*, 198, *et seq.*

4. As Morgan was *transmare* and *civiliter mortuus*, so far as we had power to compel his testimony, the Sheriff's deed was evidence as an official memorandum of what he did as Sheriff. 3 *Phil. Ev.* 1238, *and cases cited.* 2 *Ib.* 674, *et seq.* 15 *Mass.* 380. 8 *Wheat.* 326. 2 *Rand.* 87. 20 *John.* 168. 6 *Cow.* 162. 2 *Wend.* 369, '70, '75. *Ib.* 513. 7 *Wend.* 160.

5. This kind of evidence has sometimes been held not *secondary*, but equal to the officer himself, or other living and accessible witness. 2 *Phil. Ev.* 678. *Middleton vs. Milton*, 10 *B. & Cress.* 317.

6. The notion that the persons who attest an instrument are the only witnesses to prove it, is not conformable to the truth of transactions of this sort, and to speak with all possible delicacy, is absurd. 2 *John.* 451, '2. 3 *Bin.* 192. 11 *Mass.* 309. 7 *Cobb*, 358. That this deed was fraudulently antedated, was *substantially proved* by Ellis' own witness and the Justice, independently of Cordery's evidence.

7. As to proving a different *date* to the deed from that specified on its face, that is always allowable. 3 *Phil. Ev.* 1453, *and cases there cited.* In *Jackson vs. Schoonmaker*, (2 *Johns.* 230,) the deed is shown *circumstantially* to be antedated by *three years.*

8. Our Registry Acts are designed to protect innocent purchasers from suffering by the *fraud or negligence* of those who obtain prior conveyances from the same persons and omit to record them. 2 *Bin.* 502.

9. The Registry Acts are not confined in their operation to *immediate* purchasers from the same grantor, but afford like protection to one purchasing *immediately* from him, e. g. under a judgment against him. 4 *Cow.* 599.

10. A recorded deed from a Sheriff to a purchaser, without

notice, takes precedence of a prior unrecorded deed made by defendant, whose land is sold under execution. 15 *Wend.* 588.

11. The mere fact that Cordery was party to the record, did not make him incompetent, *if he chose to testify.* 20 *E. C. L. Rep.*

12. The objection to Cordery's competency, taken as it was, at the last hour on appeal, and *not till then*, must be held as coming too late, and that the right to object did not then exist, but was waived. 19 *Pick.* 202. 5 *Humph.* 111. 13 *Mass.* 379, 381. 1 *Peters*, 322. 3 *Paige*, 238. 8 *Pick.* 390. 3 *E. C. L. Rep.* 117, 118. *Ib.* 164.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The facts in this case being somewhat complicated, a brief recapitulation of them may be necessary to a proper understanding of the points made in the bill of exceptions. The declaration contains two demises—one from John Cordery, the grantee, the other from Jeremiah Smith.

The plaintiff first read in evidence a grant from the State to John Cordery, dated the 19th of October, 1831, for the lot of land in dispute, namely : No 116, in the 16th district of originally Lee, now Sumter County; proved the defendant in possession of the premises, and closed his case.

The defendant then introduced a deed from John Cordery, the grantee, to Jonathan Lyon, purporting to have been executed on the 10th day of June, 1834, but not recorded till the 17th day of April, 1851. He next read in evidence a deed from Jonathan Lyon to Major Ellis, the tenant in possession, dated the 27th of November, 1837.

The defendant having thus shown title out of Cordery, one of the lessors of the plaintiff in ejectment, the plaintiff submitted to the Jury in rebuttal, a Sheriff's deed to the lot of land in dispute, to Jeremiah Smith, the other lessor of the plaintiff, bearing date on the 5th day of March, 1835. This deed, among other things, recited, that in obedience to two writs of of *fieri facias*

issuing from a Justice's Court in Washington County, in favor of James Boatwright *vs.* John Cordery and L. D. Cordery, that said land was seized and sold as the property of the defendants, on the first Tuesday in March, 1835, and bought by Jeremiah Smith, and the title conveyed to him, and duly recorded on the 30th of August thereafter.

It will be observed that the deed from Cordery to Lyon was not recorded until nearly seven years had elapsed after its exe-· cution, and until between five and six years after the Sheriff's deed to Smith was recorded—this latter deed being registered within the time prescribed by the Stature—this is an important point to be borne in mind in the further consideration of this case.

When the Sheriff's deed was tendered, it was proven by Eason Smith, that he had searched the Sheriff's and Clerk's offices for the *fi. fas.* under which the land was sold, and could not find them; that Morgan, the Sheriff who sold the land, was out of the State, and that his predecessor was dead, and the executions could not be found among his papers. Willis A. Hawkins testified that he had inquired of the presiding Justices of the Peace for the district in which the judgments were obtained, but could not find the executions. John Shepherd, a Justice of the Peace, for the district in Washington County where the *fi. fas.* issued, swore that he had in his possession the docket containing an entry of the judgments upon which the executions issued, that sold the land, from which it appeared that the judgments were rendered at the August Term preceding the Sheriff's sale.

Counsel for the defendant objected to the reading of the Sheriff's deed, on the ground that there was no proof of any execution or judgment authorizing the sale, or that the *fi. fas.* were ever levied by the proper officer; and for the further reason, that the plaintiff had not shown sufficient diligence in searching for the executions, so as to enable him to rely upon secondary evidence. The Court overruled all the objections to the testimony, whereupon counsel excepted.

[1.] As to what degree of diligence in the search for written instruments is necessary, it is impossible to define, as each must

depend very much on its particular circumstances. In general, the party is expected to show that he has, in good faith, exhausted all the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him. *Cowen's note* 861, *to* 1 *Phil. Evid.* 452. *Rex vs. Morton,* 4 *M. & S.* 48. *Rex vs. Castleton,* 6 *T. R.* 236. 1 *Stark. Evid.* 336, 360. And this we think has been done. Recourse was had to the Magistrates who are the successors to the Justices who rendered the judgments, and who have the custody of the docket containing the entries of the judgments upon which the executions were issued. The Clerk's and Sheriff's offices have been examined; Morgan, the Sheriff who sold the land, is out of the State, and his successor dead. Upon inquiry the executions are not to be found among the papers of the latter.

Where else except in the possession of Smith himself, the purchaser at public sale, and party to the suit, are these documents likely to be? We think the proof quite satisfactory to establish a reasonable presumption of the loss or destruction of these papers, and that his Honor Judge *Warren,* committed no error in deciding the preliminary inquiries as he did, and admitting the secondary evidence.

[2.] And the recitals in the deed of the *fi. fas.* and the seizure and sale of the property under them, is *prima facie* proof at least of the facts contained in the deed. 6 *Ga. Rep.* 188.

The plaintiff next offered to read the depositions of John Cordery, the grantee, and one of the lessors of the plaintiff, to prove that the deed made by him to Lyon, was antedated, which was objected to, on two grounds: 1st, because the witness was interested, being a party to the record, and liable for costs; and 2dly, because the attesting witnesses ought first to be resorted to.

Counsel for plaintiff, to obviate the first objection, struck out the demise from Cordery, and the Court then permitted the depositions to be read, and defendant's counsel excepted.

[3.] It is admitted, that the witness was incompetent at the time he was sworn. That being the case, we think it clear, that

the disability being subsequently removed, would not operate as a purgation of the proof previously taken.

[4.] We think it equally clear, that the Court erred in holding, that the attesting witnesses need not be produced. This has been a rule from the earliest times. It is laid down in *Fortescue de Land. Leg. Ang. C.* 32. In *Rex vs. Harringworth,* (4 *M. & S.* 352,) Lord *Ellenborough* said that the rule was as "fixed, formal and universal as any that can be stated in a Court of Justice." And while he admitted in the same case, (*p.* 354,) that the subscribing witnesses might not *in fact* be the *best* witnesses, and that others might know more of the transaction than they, still as they were the "*plighted*" witnesses, they must be produced on the trial. The knowledge they have upon the subject is presumed to be essential, and is therefore indispensable.

[5.] And so strictly has this rule been observed, that it has been held, that an acknowledgment by the obligor himself, that he executed the deed, or even the admission by the defendant in an answer to a bill filed against him for a discovery, will not dispense with the testimony of the subscribing witnesses; and the reason assigned is, that a fact may be known to the subscribing witness, not within the knowledge or recollection of the party himself, and that he is entitled to avail himself of all the knowledge of the subscribing witness relative to the transaction.

[6.] And the rule is precisely the same, whether the acknowledgment is offered as evidence against the party himself who made it, or against a third person; or whether it is the foundation of the action, or comes in question collaterally as a part of the evidence in the case. 1 *Dougl.* 216. 2 *East,* 187. 4 *Ibid,* 53. 5 *T. R.* 366. 7 *Ib.* 267. 4 *Esp. N. P. C.* 30.

[7.] To this rule there are some exceptions, as 1, where writings are thirty years old; 2, where the adverse party producing the writing takes an interest under it; 3, where the attesting witness is not to be had, on account of death, incompetency from insanity, or from infamy of character, or in case of absence in a foreign country, or out of the jurisdiction of the Court. But it is not pretended that this case fell within any of

these exceptions. Indeed, the presiding Judge maintained, that Cordery was equally as competent as the two attesting witnesses, to prove that the deed was antedated.

[8.] Complaint is made against the charge of the Court, on the ground that it was not sufficiently full, and for that reason was calculated to mislead the Jury. We see no error in it. On the contrary, we think the case was fairly submitted to the Jury, upon the law and the facts as testified to; and the judgment will not be reversed, provided the charge is legal in itself, for the reason that it was not full enough. In such case it is proper to ask an additional or explanatory charge.

[9.] It only remains to determine whether a new trial should be granted, because the testimony of Cordery was improperly admitted. He swore that the deed made by him to Lyon, was executed after the executions were issued which sold the land, and that, therefore, it was antedated. But whether it was or not, is wholly immaterial. If the *fi. fas.* were not paid off, when the land was sold under them and bought by Smith, his deed must prevail, inasmuch as the other, no matter when made, was not recorded within time, and the Court fully submitted this question to the Jury; for he instructed them distinctly, that if the executions were discharged before the sale, the Sheriff's deed was void, and conveyed no title to the purchaser. And upon this single point, after all, this case turns; and I repeat, that the date of the deed from Cordery to Lyon, and about which Cordery was examined, had nothing to do with the true and only issue. For whether the conveyance to Lyon was before or after the judgments against the vendor, still if it was not recorded until many years after its execution, and after the regular registration of the other conflicting deed, the Sheriff's title is entitled to be preferred, provided the executions were subsisting and unsatisfied at the time of the sale; and this fact the Jury, by their verdict, have found to be true.

[10.] It has not been denied in the argument, but that a purchaser at a sale on execution, who has his deed first recorded, will gain the same preference over a prior unrecorded conveyance, as if he had bought directly from the debtor himself. For

the effect of a sale by the law in this respect, is just the same as if made by the individual whose agent or trustee the officer becomes, to make the transfer. All the defendant's estate is sold. The purchaser takes his place. The mischief of an unrecorded deed is the same to him as to a private purchaser. He examines the title, and from any thing that appears, the defendant is the undisputed proprietor, while, in fact, there is an outstanding deed from him, which would sweep off the property.

Upon the whole, our opinion is, that the judgment of the Circuit Court be affirmed.